Eastern District of Kentucky
**FILED**
DEC 2 0 2005
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 05-CV-339-KSF

STEVE RENNICK, SR.                                                     PLAINTIFF

VS:               **MEMORANDUM OPINION AND ORDER**

UNITED STATES OF AMERICA, ET AL.                         DEFENDANTS

The plaintiff, Steve Rennick, Sr., who is currently confined at the Federal Medical Center in Lexington, Kentucky ("FMC-Lexington"), has filed a *pro se* civil rights complaint. Although the plaintiff asserts jurisdiction under 28 U.S.C. §§1331 and 1343, the Court broadly construes his submission as one which asserts claims under 42 U.S.C. §§1983 and 1985. The plaintiff has paid the $250.00 filing fee.

This matter is before the Court for initial screening. 28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

This is a *pro se* proceeding and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines that the action is (i) frivolous or malicious or (ii) fails to state a claim upon which relief can be granted.

CLAIMS

Construed as a whole, the plaintiff alleges that the defendants, whom he alleges acted under color of law of the state of Ohio, violated his due process rights under the Fourteenth Amendment.

He also asserts numerous state law claims against the defendants: (1) negligence; (2) harassment; (3) "deliberate infliction of injury"; (4) assault; (5) fraud and misrepresentation; (6) breach of contract; (7) intentional infliction of emotional distress; and (8) willful obstruction of justice.

## DEFENDANTS

The named defendants in this action are: (1) the City of Cincinnati; (2) the City of Cincinnati Police Department ("CPD"); (3) John Mercado, Officer employed by the CPD, sued in his official and individual capacities; (4) Kevin Koo, Officer employed by the CPD, sued in his official and individual capacities; (5) Dave Moonitz, Officer employed by the CPD, sued in his official and individual capacities; (6) Robert Randolph, Detective employed by the CPD, sued in his individual capacity; (7) Thomas Stricker, Chief of the CPD, sued in his official capacity; (8) the Provident Bank, an Ohio Corporation; (9) Tim Shannon, employee of the Provident Bank, sued in his individual capacity; and (10) Mike Flaherty, employee of the Provident Bank, sued in his individual capacity.

## RELIEF

The plaintiff seeks two forms of injunctive relief. First, he requests the entry of declaratory judgment, stating that: (1) Defendant John Mercado's attempt to murder him constituted an assault and battery under Ohio law; (2) the other named defendants acted in concert to deprive him of equal protection of the law, as well as other rights under the United States Constitution; and (3) the policies of the CPD violate state and federal laws. Second, the plaintiff requests the entry of a preliminary injunction prohibiting the CPD from using confidential informants until it changes its policies and implements appropriate safeguards for its confidential informants.

The plaintiff also requests millions of dollars in damages from the defendants, jointly and severally, to compensate him for bodily injuries he sustained, as well as emotional distress that he experienced. The plaintiff further requests the award of millions of dollars in punitive damages from the defendants, jointly and severally.

PLAINTIFF'S CRIMINAL CONVICTION

1. Guilty Plea

On November 6, 2002, the plaintiff was indicted in the United States District Court for the Southern District of Ohio, Cincinnati ("the trial court"), for various drug offenses.[1] On March 5, 2003, a superseding indictment against the plaintiff was filed in the trial court. On August 19, 2003, the plaintiff pleaded guilty to violating 21 U.S.C. §846, Conspiracy to Distribute Marijuana. He received a sixty-three- (63) month sentence, plus a four-year term of supervised release.

2. Direct Appeal Issues

As will be discussed *infra*, it appears from the trial court record that at the plaintiff's sentencing hearing on January 28, 2004, he was represented by private counsel, Hon. William R. Gallagher. During the sentencing hearing, a conversation transpired on the record concerning the filing of a direct appeal on the plaintiff's behalf. Gallagher stated on the record, at that time, that he would not be representing the plaintiff after the sentencing hearing, but that he was requesting that the Clerk of the trial court file a "Notice of Appeal" on the plaintiff's behalf. The trial court record further reflects that neither the Clerk of the trial court, nor anyone else, ever filed the "Notice of Appeal" on the plaintiff's behalf.

The plaintiff then engaged a new attorney, Kenneth Lawson, to represent him in the trial

---

[1] The case was *United States v. Steve Rennick, Sr.*, 1:02-CR-00157-SJD-3 (Hon. Susan J. Dlott, presiding).

court. Lawson entered his appearance on January 29, 2004. Although Lawson filed a series of motions on the plaintiff's behalf, including a motion to reconsider, to withdraw guilty plea, and to stay execution of sentence, he did not, however, file a "Notice of Appeal" on the plaintiff's behalf.

### 3. Disposition of Plaintiff's §2255 Motion

On January 26, 2005, the plaintiff filed a motion to vacate his sentence in the trial court, pursuant to 28 U.S.C. §2255. He stated in those filings that not until November, 2004, when he engaged yet a third attorney, did he learn that no direct appeal had ever been filed on his behalf concerning his federal sentence imposed on January 28, 2004, and that a direct appeal was time-barred. He was told by his third attorney that a motion under §2255 was the last resort. The transcript from the plaintiff's sentencing hearing was not filed until December 3, 2004, and the plaintiff stated that he was unable to review it until December 8, 2005.[2]

On October 13, 2005, the trial court entered an Order in which it granted in part, and dismissed in part, the plaintiff's §2255 motion [*See* trial court record No. 210]. This Court will not reiterate herein the detailed findings of the trial court. Summarized, the trial court dismissed without prejudice four of the plaintiff's five arguments, but determined that the plaintiff was entitled to a writ of habeas corpus on the fifth issue.

The trial court concluded that, due to the fact that he thought a direct appeal was being filed on his behalf when in fact none had been filed, apparently due to someone's or several people's oversight, the plaintiff had been denied the opportunity to file a direct appeal of his federal sentence.

---

[2] On December 15, 2004, the plaintiff filed a *pro se* motion to reinstate his appeal rights pursuant to Fed.R.Civ.P. 4(b). The trial court denied that motion but invited him to file a §2255 motion.

The trial court ordered that his sentence should be vacated and reimposed for the purpose of allowing the plaintiff to file a timely direct appeal of his federal sentence.

On October 26, 2005, the plaintiff filed a motion seeking release on bond pending an appeal [*See* trial court record No. 212], to which the United States responded on October 27, 2005 [*Id.*, No. 214]. On October 28, 2005, the Court entered a "Notice" vacating the plaintiff's sentence [*Id.*, No. 215]. On October 31, 2005, the plaintiff filed a motion to withdraw his guilty plea. The United States responded on November 21, 2005 [*Id.*, No. 216].

The trial court entered an Order denying the plaintiff's motion seeking release on bond pending an appeal on December 12, 2005 [*Id.*, No. 218]. As of the date of entry of this Memorandum Opinion and Order, the trial court has not resentenced the plaintiff. Therefore, the direct appeal of his federal sentence is not yet timely.

## ALLEGATIONS OF THE COMPLAINT
### 1. Plaintiff's Status as Confidential Informant

The plaintiff has filed a typewritten, thirty-page complaint, which the Court has summarized. The plaintiff alleges that on August 21, 2003, two days after he entered his guilty plea in the trial court, he met with Defendant John Mercado of the CPD. He states that the meeting was at Mercado's request and was arranged for the purpose of registering the plaintiff as a confidential informant for the CPD [Complaint, p. 8]. He alleges that both his legal counsel and the United States Attorney prosecuting his criminal case encouraged him to become a confidential informant. He states that he was promised a substantially reduced federal sentence in the trial court, as low as probation, if he agreed to become an undercover informant [*Id.*]. Plaintiff states that Mercado assured him that he (plaintiff) would have full protection of the CPD, and that the CPD would work

5

closely with him on every detail of any potential "bust." [*Id.*]

The plaintiff alleges that as a confidential informant, he attempted to arrange a $900,000.00 drug deal involving 1,500 pounds of marijuana in Arizona, but that Mercado canceled the transaction because of the distance involved and the risk of loss of a substantial amount of money [*Id.*, p. 9]. Plaintiff states that after the Arizona drug deal fell through, he arranged, with Mercado's knowledge, a local drug deal for the purchase of 500 pounds of marijuana from a suspect, Yamine Isreal, for $300.00 per pound [*Id.*, p. 10]. The plaintiff alleges that over his (plaintiff's) strong objection, Mercado instructed the plaintiff to arrange the drug deal to take place at the plaintiff's son's trucking business, Earth Management, 1975 North Bend Road, Cincinnati, Ohio (Hamilton County, Ohio). Plaintiff alleges that Mercado insisted that the deal take place at the plaintiff's son's business [*Id*].

According to the plaintiff, because Yamine Isreal observed the presence of several law enforcement officers, he suspected that the plaintiff was working for the police and refused to go through with the planned transaction [*Id.*, p. 11]. He states that after the deal with Isreal collapsed, he received a call from an unidentified person who stated that he wanted to sell $1.2 million dollars' worth of marijuana over the course of the weekend of October 31, 2003 [*Id.*, p. 12]. Plaintiff alleges that Mercado knew all of the specifics of the deal and told the plaintiff to play along with the unidentified seller. Plaintiff states that when the seller pressed him for the money, it took several attempts before he could reach Mercado at the cell phone number Mercado had given him. Plaintiff states that seller became "very upset." [*Id.*, p. 13]. The plaintiff alleges that the following statement was made: "*He* said, 'you're dead Rennick, we've had a bead on you for two days, you're dead.'

6

These events occurred on October 31, 2003." [*Id.*] (Emphasis Added).[3]

### 3. Gunshot Injuries

The plaintiff states that on November 7, 2003, he was shot twice while he was closing the shop at Earth Management. He claims that he heard a voice say, "Rennick, you're dead." He states that it was the same voice as the one who had threatened him on October 31, 2003, and that it was Defendant Mercado's voice [*Id.*, p. 14]. The plaintiff states that he subsequently told two attorneys about Mercado's actions, and that he told Defendant David Moontiz of the Ohio Municipal Investigations about Mercado's alleged role in his shooting. Plaintiff states that although Moonitz promised to investigate, Moonitz later informed him that federal agents had taken over the investigation. In the meantime, the plaintiff was sentenced in the trial court on January 28, 2004, but remained free on bond pending surrender to the Bureau of Prisons [*Id.*, p. 15].

The plaintiff devotes the majority of the remainder of his complaint to describing in detail the involvement of, and/or actions of, other law enforcement officials, and the CPD, in covering up the fact that Mercado shot him on November 7, 2003. He alleges that Defendant Randolph, acting for Assistant United States Attorney Robert Brichler, failed to properly investigate his claims concerning Mercado's alleged actions [*Id.*, pp. 18-19].

Plaintiff further alleges that Randolph told his (plaintiff's) sister, Jo Anne Childress, that the United States would indict the plaintiff's entire family if he (plaintiff) did not drop his allegations about Mercado. The plaintiff alleges that the CPD and the city of Cincinnati failed to provide proper

---

[3]

In that passage, the plaintiff did not identify who "He" was. Later in the complaint, he alleged that Defendant Mercado was the person who had threatened his life on October 31, 2003. [*Id.*, p. 14, ¶ 57].

7

training and safety measures for confidential informants such as he. He further alleges that the CPD knew that he (plaintiff) suffered from Post Traumatic Stress Syndrome, and that as a result of that mental condition he was at greater risk of physical harm, to the extent that he acted as an undercover informant for the CPD [*Id.* p. 21]. He alleges that the CPD offered him no physical protection as a confidential informant, and that as a result of that failure he sustained the gunshot injuries on November 7, 2003 [*Id.*, p. 22].

### 4. Bank Fraud Allegations

In the middle of his complaint, the plaintiff sets forth a rather confusing set of facts. The plaintiff alleges that Defendant Mercado and Defendants Tim Shannon and Mike Flaherty, employees of Defendant Provident Bank, conspired to create a warrant for his indictment and arrest for bank fraud. While the facts are not clear, the plaintiff alleges that Mercado and the Provident Bank defendants attempted to persuade "the state court" to set Plaintiff's bond at $500,000.00, all cash.[4] According to the plaintiff, the state court refused the defendants' request and released him on his own recognizance.[5]

Plaintiff next states that Provident Bank filed a motion in an unidentified court, attempting to obtain an emergency, pre-judgment attachment of the assets of Earth Management [*Id.*, p. 16]. The plaintiff states that Provident Bank's motion "was denied" because there was no evidence that

---

[4] The plaintiff states that the bank fraud allegation stemmed from "a loan the plaintiff converted on the purchase of a Freightliner Semi Tractor." [*Id.*, p. 15, ¶ 67]

[5] He states that on May 18, 2004, he was acquitted, although it is not clear to this Court either of what offense he was acquitted or in what court he was acquitted [*Id.*, p. 16].

Earth Management was involved in the plaintiff's activities with Provident Bank [*Id.*]. The plaintiff alleges that notwithstanding that fact, Defendant Shannon authorized money to be withdrawn from Earth Management's bank account.

## DISCUSSION

The plaintiff states that the defendants violated his rights under the Fifth and Fourteenth Amendments of the United States Constitution. The plaintiff has named the City of Cincinnati, the CPD, and four agents/employees of the CPD (Defendants Stricker, Mercado, Koo and Moonitz), all of whom appear to have been persons acting under color of state law. Additionally, the plaintiff alleges that Defendant Provident Bank and two of its employees, Defendants Tim Shannon and Mike Flaherty, obstructed justice and conspired with the CPD to violate his constitutional rights by falsely accusing him of bank fraud.

The instant complaint stems from the plaintiff's sentence imposed in 2004. The plaintiff clearly states in the instant complaint that two days after he entered a guilty plea in the trial court, he became an undercover/confidential informant in exchange for a reduced federal sentence. He alleges that the Assistant United States Attorney for the Southern District of Ohio induced him to become a confidential informant. To the extent that the plaintiff alleges that his decision to act as an undercover informant for the CPD involves a bargained-for exchange affecting the length of his federal sentence, the facts giving rise to the plaintiff's various §1983 claims are inextricably entwined with his federal sentence, which the plaintiff stated on the record in the trial court he wants to appeal.

The plaintiff's own recent statements in the trial court record reinforce this point. In his

9

"Traverse of the Government's Response to Defendant's [Plaintiff's] Motion for Bail Pending Appeal" which the plaintiff filed in the trial court on November 21, 2005, the plaintiff discussed what he perceives to be the connection between his confidential informant status to his federal sentence. The plaintiff stated in that document that he will:

> "further show, on the record, that AUSA [Assistant United States Attorney] Brichler enlisted the services of a co-defendant to further coerce the defendant into entering the plea in this matter. The defendant will show that the government's involvement and use of this private sector actor rises to the level demanding reversal because the improper conduct is directly attributable to the prosecution."

[*See* Trial Court Record No. 217, p. 3]

Through the mechanism of a §2255 motion, the plaintiff has asked the trial court to resentence him so that he can appeal that sentence in the Sixth Circuit. The trial court has granted his request and will be resentencing the plaintiff in the near future, for the specific purpose of enabling him to file a direct appeal of his sentence. To the extent that the instant §1983 complaint is an attempt to collaterally attack whatever will be his newly imposed federal sentence, *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed.2d 383 (1994), operates as a complete bar to the plaintiff's claims for damages against the defendants at this time.

*Heck v. Humphrey* precludes the recovery of civil damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, where the plaintiff is unable to prove that the underlying conviction or sentence has been: (1) reversed on direct appeal; (2) expunged by executive order; (3) declared invalid by a state tribunal authorized to make such determination; or (4) called into question by a federal court's issuance of a writ of habeas corpus. *Id.*, 512 U.S. 477, 486-87.

10

None of the requisite conditions currently exist. The plaintiff's underlying *conviction* has not been invalidated under the dictates of *Heck v. Humphrey*. In fact, as the trial court specifically noted in its Opinion and Order of October 13, 2005, the plaintiff's underlying conviction is not subject to attack because he entered a guilty plea to drug offenses on August 18, 2003 [*See* trial court record No. 210, pp. 12-13].[6] The trial court vacated *only* the petitioner's January 28, 2004 sentence and will be reimposing that sentence. The resentencing process will enable the plaintiff to appeal his federal *sentence* and avail himself of recent Supreme Court decisions affecting federal sentences, such as *United States v. Booker*, 125 S. Ct. 738 (2005), and *Blakely v. Washington*, 124 S. Ct. 2531 (2004).

As the trial court has not yet re-sentenced the plaintiff, and he has therefore yet to appeal what will be a newly imposed federal sentence, it would be premature at this time for this Court to entertain the plaintiff's claims: (1) that he was denied due process or equal protection of law in violation of the Fourteenth Amendment, or (2) that the defendants entered into a conspiracy to deny him of either his due process rights or equal protection of the law. Accordingly, the Court lacks jurisdiction to consider the plaintiff's claims for damages and other relief against the named

---

[6] The trial court stated as follows:

> The petitioner [Plaintiff] cannot dispute that on August 18, 2003, he pled guilty to criminal conspiracy to distribute marijuana, as alleged in count one of his indictment . . . . In general, once a criminal defendant "has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of a guilty plea. *Tollett v. Henderson*, 411 U.S. 258, 257 (1973). Because a voluntary, intelligent and counseled guilty plea is treated as reliable evidence of factual guilt, a valid plea-taking "renders irrelevant those constitutional violations" "which do not stand in the way of conviction if factual guilt is validly established." *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975)."

*See* Trial Court record, No. 210, p. 13.

11

defendants.

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** that this action is **DISMISSED WITHOUT PREJUDICE**, *sua sponte*, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the defendants.

This the 20th day of December, 2005.

KARL S. FORESTER, SENIOR JUDGE